2020 IL App (1st) 190786-U
Order filed February 7, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-0786

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| AMERICAN KITCHEN DELIGHTS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 18 L 50595 |
| ILLINOIS DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, JEFF MAYS, Director of Employment | ) | |
| Security; and EARNEST BAKER, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Board's factual findings were not against the manifest weight of the evidence and its determination that the claimant was not ineligible for benefits under section 603 of the Unemployment Insurance Act (820 ILCS 405/603 (West 2016)) was not clearly erroneous.

¶ 2    Plaintiff-appellant, American Kitchen Delights, Inc. (American Kitchen), appeals the order of the circuit court affirming a final administrative decision of the Board of, defendant-appellee, the Illinois Department of Employment Security (the Department), which determined that

defendant-appellee, Earnest Baker, was not ineligible for benefits under section 603 of the Unemployment Insurance Act (Act) (820 ILCS 405/603 (West 2016)) because he did not refuse any offers to work from American Kitchen. We affirm.[1]

¶ 3                                     I. Background

¶ 4      Mr. Baker began working for American Kitchen in November 2004 as a maintenance man and was later promoted to a delivery truck driver. In 2017, Mr. Baker injured his back, went on disability leave, and began collecting workers' compensation. In November 2017, Mr. Baker filed a claim for unemployment insurance benefits with the Department asserting that American Kitchen did not allow him to resume work after he was cleared to do so. American Kitchen timely protested the claim by letter to the Department signed by Shahnawaz Hasan, the President of American Kitchen. In his letter, Mr. Hasan asserted that Mr. Baker "refused to resume his position as a driver and then refused the other positions offered to him." Because of the protest, the Department scheduled an interview to determine the validity of Mr. Baker's claim.

¶ 5      In December 2017, a claims adjudicator of the Department interviewed Mr. Baker and Mr. Hasan by telephone. The Department's adjudication summary described the interview. The summary indicated that Mr. Baker said Mr. Hasan offered him a driver position, on November 15, 2017, and that Mr. Baker answered yes when asked during the interview, "[did] you refuse the offer of work?". However, the adjudication summary also detailed that Mr. Baker stated: "I called [Mr. Hasan] and he wouldn't take my call, so I sent him a text that I will be there Monday morning 11/14/2017 ready for full duty. He did not respond to my text. I showed for work on Monday,

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

punched in, and went to the office to see Mr. Hasan, he was not in. I texted him asking him what he wants me to do. He told me he will be at the plant in 15 minutes."

¶ 6      Mr. Hasan when interviewed stated that Mr. Baker refused his offer to drive a truck because he was no longer able to do that. Mr. Hasan subsequently first offered Mr. Baker a position "driving temps in a van from the staffing agency to the worksite," which Mr. Baker declined; and then offered him a desk position at a pay rate of $12 an hour, which Mr. Baker declined because he wanted his former rate of $25 an hour. In his rebuttal to Mr. Hasan, Mr. Baker denied he had refused to go back to work, stated that he had worked at American Kitchen for 14 years, and had "done everything the employer asked." Because he needed to support his family, he "would have done anything" to return. After receiving Mr. Baker's medical clearance, Mr. Hasan avoided Mr. Baker's calls. After the claims adjudicator asked him about the position to drive temporary workers, Mr. Baker responded that he "wasn't sure it was legal."

¶ 7      On December 11, 2017, the claims adjudicator determined that Mr. Baker was disqualified from benefits under section 603 of the Act because he received a reasonable offer of suitable employment but failed to accept it under section 603 of the Act. 820 ILCS 405/603 (2016).

¶ 8      Mr. Baker appealed that decision and a Department referee scheduled a telephone hearing on January 9, 2018. The notice of telephone hearing stated that an issue to be considered at the hearing was whether Mr. Baker refused an offer of suitable work without good cause. The notice informed the parties that any documents to be entered as exhibits should be faxed or mailed to the referee and "must arrive 24 hours in advance of the hearing and must also be sent to the opposing side." The notice warned the parties that "exhibits not in the hands of both the [referee] or opposing side, might not be considered." The Department also attached and instructed the parties to read a

brochure entitled "Preparing for your Appeal Hearing," which states that the referee may decide not to consider evidence not provided prior to the hearing.

¶ 9    At the telephone hearing, the following documents were entered into the record: the December 11, 2017 claims adjudicator's determination; the Department's records indicating that Mr. Baker first filed for unemployment benefits during the week of November 12, 2017; American Kitchen's November 29, 2017 protest letter; and Mr. Baker's December 18, 2017 appeal letter.

¶ 10    Only Mr. Baker participated in the hearing. Mr. Baker testified that he was employed by American Kitchen in 2004 as a maintenance man and was later promoted to a truck driver earning $25 an hour. Mr. Baker was injured and went on leave on May 1, 2017. On November 3, 2017, he had been cleared by his doctor to return to work. He called and texted Mr. Hasan informing Mr. Hasan that he would be reporting for full duty on November 6. Mr. Baker appeared for work on that day, but Mr. Hasan refused to let him return to work because he had not received the clearance paperwork. Mr. Hasan told him to go home, fax him the medical clearance information, and then call him. Mr. Baker did so and called Mr. Hasan multiple times without an answer. Mr. Hasan eventually answered and told Mr. Baker that he was in a meeting and would call him back later. On November 14, Mr. Baker called Mr. Hasan to inquire about the status of his return to work. During the call, Mr. Hasan told Mr. Baker to find day laborers and drive them between Indiana and American Kitchen. After initially expressing concerns, Mr. Baker told Mr. Hasan, "whatever you want me to do, I'll do." Mr. Baker told the referee that he had never refused an offer by American Kitchen for work and that he told Mr. Hasan that he would come back to full duty, no matter what. He testified that he went to his doctor the day before the hearing to get another note stating that he was cleared to work. The referee asked Mr. Baker to fax her that doctor's note.

¶ 11     After the hearing, Mr. Baker faxed a January 8, 2018 doctor's note;[2] a July 24, 2017 report created by Dr. Nikola Nenadovich instructing that Mr. Baker's work status was "regular duties;" and a report on an independent medical examination by Dr. Frank M. Philips on August 24, 2017 stating that Mr. Baker could work with a 30 pound lifting restriction.

¶ 12     On January 10, 2018, the referee issued a decision determining that Mr. Baker was not ineligible for unemployment benefits under section 603 of the Act because American Kitchen never made him a *bona fide* offer. However, at the request of American Kitchen, the referee scheduled a second hearing because American Kitchen had not been served with the referee's decision until almost six months after the first hearing. The notice of the second hearing, again, informed the parties that any exhibits must be provided to the referee and opposing side in advance of the hearing or the exhibits may not be considered.

¶ 13     At the second hearing, on July 17, 2018, both Mr. Baker and Mr. Hasan testified. The referee entered the same exhibits into the record as set forth above in ¶ 8.

¶ 14     According to Mr. Hasan, at an unspecified time after Mr. Baker was medically cleared, he came to the office to work. Mr. Baker said he still was not well. Mr. Hasan observed that Mr. Baker was standing and sitting crooked. Nonetheless, Mr. Hasan offered Mr. Baker his old position as a delivery truck driver for $25 an hour or in the alternative, if he could not drive a truck, Mr. Hasan offered him a desk position for $10 to $12 per hour. Mr. Baker refused both positions. Mr. Hasan testified that he called Mr. Baker in May 2018 to offer him the delivery truck driver position again, but Mr. Baker did not return his call.

---

[2] The copy of the note in the record is difficult to read. The name of the doctor is very hard to discern.

¶ 15    Mr. Baker provided testimony similar to that from the first hearing. Mr. Baker asserted that in early November 2017, he attempted to return to full duty as a delivery truck driver when he was medically cleared, but Mr. Hasan refused to let him resume work, gave him the "run around," and did not respond to communications. Mr. Baker testified that he never told Mr. Hasan that he was not well enough to drive the truck. Mr. Baker also denied that Mr. Hasan contacted him about the delivery truck driver position in May 2018.

¶ 16    Both Mr. Baker and Mr. Hasan claimed to have witnesses and documentation to support their versions of events, which were not previously provided to the referee, as they had been instructed. Mr. Hasan wanted an opportunity to produce phone records and to have employees testify. Mr. Baker sought time to produce text messages exchanged between the parties. The referee continued the hearing to July 19, 2018 and instructed that all witness information and relevant documents be provided before the continued hearing date.

¶ 17    On July 18, 2018, Mr. Hasan faxed the referee a letter purportedly signed by individuals that witnessed Mr. Baker decline the truck driver position (witness letter); a letter signed by Mr. Hasan "provid[ing] more detail about this case"; and phone logs from May 20, 2017 to the middle of the day on May 29, 2018[3]. No documents were provided by Mr. Baker.

¶ 18    At the continued hearing, Mr. Hasan testified that in November 2017, Mr. Baker called him and told him he was ready to come back to work. Mr. Hasan would not let Mr. Baker work until he received the paperwork that cleared Mr. Baker to work. According to Mr. Hasan, in January 2018 ("when [Mr. Baker] first showed up"), he offered Mr. Baker the delivery truck driver

---

[3] In Mr. Hasan's letter to the referee, he noted that, on the phone records, he highlighted the phone calls between himself and Mr. Baker. These highlights have caused the phone numbers to become unreadable.

position, but Mr. Baker refused it because he was still in pain. Mr. Hasan then offered Mr. Baker a desk job and Mr. Baker refused but said he would take the position at $25 an hour. Mr. Hasan described the desk job duties as sitting and ordering parts, answering phones, and "stuff like that." Mr. Hasan did not have a written record of any of the purported offers to Mr. Baker.

¶ 19    Mr. Hasan submitted the witness letter which was purportedly signed by employees of American Kitchen. The witness letter stated, "the following individuals were present in the office when Mr. Baker declined the position of truck driver that I offered him and requested a desk job position instead." The witness letter did not specify the date the events occurred, the specific location where the offer was made, or the specific locations of the individuals in relation to the purported events. Several signatures appeared at the bottom of the witness letter, but no printed names or contact information were provided for the signatories. Mr. Hasan did not present these individuals to testify.

¶ 20    Mr. Hasan testified that when Mr. Baker "walked away" in January, Mr. Hasan decided to "dismantle" the truck driver position. He did not hire someone to replace Mr. Baker. On May 29, 2018, "[a]s soon as I felt we had enough business to start driving again, I called Mr. Baker. And Mr. Baker never returned my call." Mr. Hasan testified that he left a message. According to Mr. Hasan, this was the May 2018 call in which he offered Mr. Baker the delivery truck driving position for the second time. Mr. Hasan testified that the phone logs show that Mr. Baker never returned this call. Mr. Hasan, asserted that, from May 2017 to June 2018, a total of 15 calls were made by Mr. Baker to Mr. Hasan and there were 18 calls from Mr. Hasan to Mr. Baker. Mr. Hasan told the referee that the phone logs showed "back and forth. He calling me; me calling him back." Mr. Hasan did not have a written record of what was said on those calls. The last call made by Mr.

Hasan to Mr. Baker on the phone logs was May 29 at 10:45 a.m. in which he purportedly left a message. The phone logs show no phone calls between the parties after the "last call," but the logs only extend through May 29, 2018 at 2:30 p.m.

¶ 21    Mr. Baker testified that Mr. Hasan never offered him the delivery truck driver position after he was cleared to work in November 2017. When he returned to American Kitchen, Mr. Hasan would not allow Mr. Baker to work without the clearance paperwork. After providing Mr. Hasan with the paperwork, Mr. Baker stated that he continuously called and texted Mr. Hasan but was never allowed to resume work. Mr. Baker denied being offered the desk position and denied he met with Mr. Hasan in January 2018.

¶ 22    Mr. Baker acknowledged that at an unspecified time they had discussed an overnight line position, in which Mr. Baker would work for $10 to $12 an hour. Mr. Baker stated "okay, I'll take it, whatever." Thereafter, Mr. Hasan never called him back.

¶ 23    At some point, they also discussed a position whereby Mr. Baker would drive day laborers from Indiana to American Kitchen. According to Mr. Baker, Mr. Hasan "told me to find a way to get people from day labor, and ten [*sic*] call [him] back to let [him] know that I can do it." Mr. Baker stated that he "didn't know how to do that" and that Mr. Hasan never followed up. Mr. Baker acknowledged hearing from Mr. Hasan in May 2018 but denied that he was offered his former job at that time. Instead, Mr. Hasan's voicemail said only, "Hasan, call me."

¶ 24    At the conclusion of the hearing, the referee refused to admit the witness letter into evidence because it did not specifically state a date as to when the signatories allegedly heard the job offer and refusal or where they were at the time. Mr. Hasan then asserted that he had witnesses to testify to the letter. The referee in response reminded Mr. Hasan that she previously asked him

to have any witnesses on the phone and available to testify during the hearing. Mr. Hasan claimed that the employees "are here." The referee noted they were already a half an hour into the hearing. The individuals did not testify. Further, the referee, in oral remarks, stated that neither party met its burden of proof and more specifically stating "I don't have a specified time, or date where an offer was made. I have *** conflicting testimony as to what job was offered, if any. And also, when it was offered."

¶ 25    On January 20, 2018, the referee issued a written decision[4] concluding that Mr. Baker was eligible for unemployment benefits from November 12, 2017 under section 603 of the Act because American Kitchen never made him a *bona fide* offer to work.

¶ 26    By a letter signed by Mr. Hasan, American Kitchen timely appealed the referee's decision to the Board. No written arguments or requests to submit additional evidence were submitted to the Board as allowed by Ill. Admin. Code 2720.315.

¶ 27    On August 29, 2018, without taking further evidence, the Board issued a decision determining that Mr. Baker was not ineligible for unemployment benefits under section 603 of the Act. The Board reviewed the entire record and found that the referee's decision was "supported by the record and the law," and incorporated it into its decision.

¶ 28    In its decision, the Board reviewed the evidence in the record[5]. Mr. Baker returned to work after he was medically cleared, but was sent home because Mr. Hasan did not have the proper

---

[4] A referee's decision must be based on the preponderance of the credible, legally competent evidence in the record. 56 Ill. Admin. Code § 2720.270.

[5] The record includes a transcript of the telephone hearings, a paper copy of all documents introduced into evidence, all notices, written motions or requests, decisions, findings of fact, and reports of investigations by the adjudicator, the referee, or the Board relating to the factual and legal issues on appeal. 56 Ill. Admin. Code § 2720.265.

paperwork. Mr. Baker sent Mr. Hasan a copy of the release to work, repeatedly called Mr. Hasan, but was not returned to his previous position. Mr. Hasan testified that Mr. Baker was not well enough to drive so Mr. Hasan offered Mr. Baker other work, but for lower pay. Mr. Hasan contended that other witnesses heard Mr. Baker's refusal to drive, but none of these individuals were called to testify. Mr. Baker denied that he refused any work, even that for a lower rate of pay. At one point, the parties discussed an overnight line position, which Mr. Baker accepted. However, Mr. Hasan did not respond to Mr. Baker's calls about the overnight line position and Mr. Baker was not put back to work. Further, the parties discussed Mr. Baker driving temporary workers six months after the time period under review. Mr. Baker did not know "how to arrange that." The Board found this discussion did not constitute a "firm offer."

¶ 29    The Board found that "the credible and consistent evidence" did not establish that Mr. Baker refused any work offers made by American Kitchen. The Board concluded that Mr. Baker "accepted the line position, even at a lower rate of pay, but was not allowed to return to work in any capacity." The Board further found that the American Kitchen did not make a "firm offer" to drive temporary workers.

¶ 30    On September 11, 2018, American Kitchen filed a complaint in the circuit court for administrative review of the Board's final decision. The circuit court, on March 25, 2019, affirmed the decision of the Board.

¶ 31    American Kitchen timely filed a notice of appeal on April 16, 2019.

¶ 32                                    II. Analysis

¶ 33    In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)) we review the administrative agency's decision, not the circuit court's

determination. *Phistry v. Department of Employment Security*, 405 Ill. App. 3d 604, 607 (2010). Where, as here, the Board incorporated the referee's decision in its entirety as part of its decision and made no additional factual findings, it is proper to review the findings of fact and conclusions of law made by the referee. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 21.

¶ 34    The scope of judicial review of an administrative agency's decision extends to all questions of law and fact presented in the record. 735 ILCS 5/3-110 (West 2018). The standard of review applicable to the agency's decision depends on whether the question presented is one of fact, law, or a mixed question of law and fact. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05 (1998).

¶ 35    Here, the central issue before the Board was whether Mr. Baker was ineligible to receive unemployment compensation benefits under section 603 of the Act. That section states:

   "An individual shall be ineligible for benefits if he has failed, without good cause, *** to accept suitable work when offered him by the employment office or an employing unit, or to return to his customary self-employment (if any) when so directed by the employment office or the Director." 820 ILCS 405/603 (West 2016).

¶ 36    American Kitchen maintains that there were no disputed material facts[6] and therefore the Board's decision presents a pure question of law and is subject to *de novo* review. See *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 6-57 (1998). Mr. Baker maintains that this case presents a pure question of fact and the Board's decision should only be reversed if it is against the manifest weight of the evidence. See *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485,

---

[6] American Kitchen asserts that the parties agreed that Mr. Hasan offered Mr. Baker the position to drive temporary workers and the issue is what conclusion must be drawn from that fact. However, at the administrative level, the parties disputed the facts surrounding the purported offer.

507 (2007). The Department maintains that the factual findings at issue should be reviewed under the manifest weight of the evidence standard, and the Board's application of those factual findings to the statutory standard should be reviewed for clear error. See *Petrovic*, 2016 IL 118562, ¶ 21. We agree with the Department.

¶ 37    We must first determine whether the agency's factual findings, that American Kitchen did not make any *bona fide* offers to work and that Mr. Baker did not refuse any offers to work from American Kitchen, are contrary to the manifest weight of the evidence. *Rodriguez v. Weis*, 408 Ill. App. 3d 663, 668 (2011). The agency's factual findings are deemed *prima facie* correct and may only be reversed if against the manifest weight of the evidence. *Pesoli v. Department of Employment Security*, 2012 IL App (1st) 111835, ¶ 20. In reviewing the agency's factual findings, this court does not weigh the evidence or substitute its judgment for that of the agency. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). This court also does not reassess witness credibility or resolve conflicts in the testimony. *Pesoli*, 2012 IL App (1st) 111835, ¶ 26. A factual finding is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Abrahamson*, 153 Ill. 2d at 88.

¶ 38    To receive unemployment benefits, Mr. Baker had to meet the eligibility requirements of section 500 of the Act and not be subject to any of the Act's exemption or disqualification provisions. See *Acevedo v. Department of Employment Security*, 324 Ill. App. 3d 768, 771 (2001); 820 ILCS 405/500. The Act must be construed liberally for the unemployed worker's benefit. *Lester v. Department of Employment Security*, 354 Ill. App. 3d 51 (2004) (citing *Komarec v. Illinois Department of Labor*, 144 Ill. App. 3d 1105, 1110 (1986)). Under section 603 the Act, if an employee "refus[es] to work," they are ineligible for unemployment benefits. 820 ILCS

405/603. An employee refuses to work if "he has failed without good cause *** to accept suitable work when offered him by the employment office or an employing unit." *Id.* An applicant must be "ready and willing to accept suitable work. A claimant who refuses a job offer with suitable wages and conditions is not deemed involuntarily unemployed, but unemployed by his own choosing[.]" *Lester*, 354 Ill. App. 3d 51, 56 (2004) (citations omitted). Thus, the employer must first make an offer of suitable employment to reach the question of whether an offer was refused.

¶ 39    The Board, in addition to incorporating the referee's decision into its own, which found that American Kitchen did not make Mr. Baker any *bona fide* offers of work to Mr. Baker, specifically found that Mr. Hasan's discussion with Mr. Baker about the job to drive day laborers did not constitute a "firm offer." In reaching these findings the Board and the referee rejected Mr. Hasan's testimony. The Board found the "credible and consistent evidence has not shown that [Mr. Baker] refused any work offers made by the employer." We conclude that these findings are not against the manifest weight of the evidence.

¶ 40    While the Act does not require that an offer of work be reduced to writing, it does require that the employer present the claimant with an offer of work. *Behling v. Department of Labor*, 171 Ill. App. 3d 804, 810 (1988). Where the offer lacks necessary details such as the rate of pay, benefits, supervision, job duties, or type of work, no definite offer of employment has been made. *Id.*

¶ 41    It is undisputed that American Kitchen never sent Mr. Baker any offers to work in writing, so we look to the evidence relating to discussions between the parties to determine whether the necessary details were present to create firm offers of suitable employment.

¶ 42    First, Mr. Hasan gave conflicting testimony as to when he made Mr. Baker an offer to resume his former truck driving position. During the initial claims adjudicator interview, Mr. Hasan stated that he offered Mr. Baker the truck driving position on November 15, 2017. His testimony at the referee hearings was different and conflicting. Mr. Hasan testified that he would not let Mr. Baker work in November 2017 because he did not have the proper paperwork. Mr. Hasan also testified that he did not see Mr. Baker until January 2018, at which time he offered Mr. Baker the truck driving position for the first time. Mr. Hasan also testified that he offered Mr. Baker the truck driving position in May 2018, when he felt there was enough business to start driving the truck again. Mr. Hasan said he made the offer in May by leaving Mr. Baker a voicemail which Mr. Baker never returned. Mr. Baker, on the other hand, testified that the voicemail only said "Hasan, call me." Although the summary of the claims adjudicator's interview had some inconsistencies, Mr. Baker, overall, consistently maintained throughout the process that he was never offered the truck driving position. Instead, Mr. Hasan ignored Mr. Baker's numerous attempts to return to work and his clear expression that he would do anything to return to full duty to support his family.

¶ 43    The agency rejected Mr. Hasan's conflict-filled testimony that he made an offer of a truck driver position which was refused and, instead, accepted Mr. Baker's version of what happened. On review, we will not reweigh the evidence and will not disturb the findings of the Board's where, as here, the opposite conclusion is not clearly evident. Thus, the finding that American Kitchen did not make a *bona fide* offer as to driving a truck was not against the weight of evidence.

¶ 44    As to the desk job, Mr. Hasan's testimony again was inconsistent as to when he offered Mr. Baker this position. Moreover, Mr. Hasan described the desk position duties to the referee in

vague terms, stating that "[Mr. Baker] would be sitting and ordering parts, and things like that, answering phones." Nonetheless, there is no evidence establishing that Mr. Hasan discussed the specific pay rate, benefits, or duties of the position with Mr. Baker. The finding that American Kitchen did not make a *bona fide* offer of a desk job to Mr. Baker was not against the manifest weight of the evidence. See *Behling*, 171 Ill. App. 3d at 810 (where the court found there was no definitive offer when the offer lacked specific details such as rate of pay and job duties).

¶ 45   Regarding the job offer to drive day laborers from Indiana to American Kitchen, the evidence is inconsistent as to whether the offer was made. In the initial interview, Mr. Hasan said he discussed the position with Mr. Baker prior to December 2017. This testimony is inconsistent with Mr. Hasan's later position that no job offer was made until January 2018 and that he would not allow him to work in November 2017. Nonetheless, American Kitchen maintains that during the claims adjudicator's interview, Mr. Baker admitted that he received an offer to drive day laborers. In response to Mr. Hasan's interview statement about the day laborer offer, Mr. Baker stated he was not sure that a job driving laborers was legal. His response did not indicate that a firm offer to do so had been made by Mr. Hasan. Moreover, even if there were some discussions about the position, there was no evidence, establishing that specific job duties, pay rate, hours, supervision, or benefits were provided to Mr. Baker. Instead, Mr. Hasan told Mr. Baker to "find a way to get people from day labor" and then to let him know whether Mr. Baker could do the job. The Board's finding that there was no firm offer to drive day laborers was not against the manifest weight of the evidence.

¶ 46   Next, the Board found that Mr. Baker did not refuse any offers to work from American Kitchen. As to the truck driving position, the desk position, and the position driving day laborers,

we have determined that the evidence was insufficient to establish that offers were made. Therefore, the Board's finding that Mr. Baker had not refused such offers was not against the manifest weight of the evidence as an individual cannot refuse an offer that was never provided.

¶ 47    As to the overnight line position, Mr. Baker conceded that he accepted the position, but Mr. Hasan did not return his numerous phone calls about the job or give him consent to return to work. American Kitchen argues that the finding that Mr. Baker did not refuse the offer of a line position was against the manifest weight of the evidence because the phone logs show multiple calls between the two men. The phone records include all incoming and outgoing calls from at least one of Mr. Hasan's phone lines. Mr. Hasan indicated that he highlighted the calls between himself and Mr. Baker. These highlights, however, made the phone numbers and names unreadable on the copy in the record. Additionally, the records do not establish that the two men spoke to each other or the subject of any conversations. Mr. Hasan conceded that he did not have a written record of any of the conversations. Further, we do not know when the offer for the overnight line position was made and therefore do not know if these records pertain to the appliable time period. Thus, the Board's finding that Mr. Baker did not refuse the offer of an overnight line position was not against the manifest weight of the evidence.

¶ 48    We must next determine whether the Board erred in finding Mr. Baker was not ineligible for unemployment benefits under section 603 of the Act. This issue turns on whether under the established facts, Mr. Baker refused a suitable offer of employment from American Kitchen, which would prevent him from receiving benefits under the exemption provisions of section 603. This is a mixed question of fact and law, which we review under a clearly erroneous standard. *AFM Messenger Serv., Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001). The

Board's decision will be deemed clearly erroneous only where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *AFM Messenger Service*, 198 Ill. 2d 3 at 395. Having concluded that the factual findings that Mr. Baker did not refuse an offer to work from American Kitchen were supported by the manifest weight of the evidence and based on our review of the record, we are not left with the definite and firm conviction that the Board made a mistake in deciding that Mr. Baker was entitled to unemployment benefits. Therefore, the Board's determination was not clearly erroneous.

¶ 49     We lastly address American Kitchen's claim that it was denied a full and fair opportunity to be heard in line with the fundamental requirements of due process. American Kitchen contends that the Board denied it a fair hearing and due process when the referee refused to allow American Kitchen's supporting witnesses to testify. The Board argues that American Kitchen forfeited the issue by failing to raise it before the Board. See *Cinkus v. Village of Stickney Mun. Officers Electoral Board*, 288 Ill. 2d 200, 212 (2008); *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 328 (2009).

¶ 50     Our review of the record reveals that American Kitchen did not raise this constitutional claim at any time during the proceedings before the adjudicator, the referee, or the Board. The first time American Kitchen raised these arguments was during the administrative review proceeding in the circuit court. A party's failure to raise an issue before an administrative body, even one involving constitutional due process rights, results in forfeiture of the issue on appeal. *Lehmann v. Department of Children & Family Services*, 342 Ill. App. 3d 1069, 1078 (2003) (citing *S.W. v. Department of Children & Family Services*, 276 Ill. App. 3d 672, 679 (1995)). American Kitchen argues that its due process argument was raised at the first opportunity after the Board's decision

was rendered. However, American Kitchen's argument is based on an evidentiary ruling by the referee. Thus, American Kitchen had the opportunity to first raise the issue before the Board, which it did not do. Therefore, there is no basis for this court to review the claim. *Cinkus*, 288 Ill. 2d at 212-13. Accordingly, American Kitchen has forfeited its claim that it was denied due process and a fair hearing.

¶ 51                                        III. Conclusion

¶ 52    For the reasons discussed above, we conclude the Department's findings of fact are not against the manifest weight of the evidence and its conclusion that Mr. Baker was not ineligible for unemployment benefits under section 603 of the Act based on those findings is not clearly erroneous. Therefore, we affirm the judgment of the circuit court, which affirmed the Board's decision.

¶ 53    Affirmed.